IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LARRY D. TYLER**,

        Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

        Defendant.

Case No. 3:15-cv-01879-SI

**OPINION AND ORDER**

Merrill Schneider, SCHNEIDER KERR LAW OFFICES, P.O. Box 14490 Portland, OR 97293. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Larry Tyler ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of

PAGE 1 – OPINION AND ORDER

the Social Security Act. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff is a sixty-three-year-old man who served in both the United States Marines and the National Guard until 2000. AR 640. After serving in the military, Plaintiff worked as a buffet server and busser until 2004, when he suffered a back injury. AR 44-6, 382. From 2006 to 2009, Plaintiff worked for short periods of time in various positions as a construction laborer, factory worker, and fast food worker. AR 376, 382. On July 11, 2012,[1] Plaintiff protectively filed an application for DIB and an application for SSI with an alleged disability onset date of December 31, 2004. He claimed he was unable to work due to hearing loss, high blood pressure, back problems, and hip problems. AR 375.

Plaintiff's applications were initially denied on September 11, 2012, and were again denied upon reconsideration on December 26, 2012. AR 19. A hearing was held on April 21, 2014 at Plaintiff's request with Plaintiff's counsel present. AR 19. A vocational expert ("VE") testified at the hearing. AR 19. Upon considering the evidence, the Administrative Law Judge ("ALJ") concluded that Plaintiff was not disabled as defined in the Social Security Act. AR 20. Plaintiff seeks review of the ALJ's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

---

[1] Plaintiff also filed prior applications on May 21, 2009, alleging disability beginning on December 31, 2004, and on June 29, 2010 (DIB) and August 26, 2010 (SSI), alleging disability beginning June 1, 2008. All of these applications were denied and it does not appear that Plaintiff appealed those denials. AR 19. The ALJ did not, however, apply res judicata to Plaintiff's applications.

PAGE 3 – OPINION AND ORDER

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ applied the sequential analysis. AR 21. At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2011, and that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of December 31, 2004. AR 21. The ALJ noted that although Plaintiff had worked in various jobs after the alleged disability

PAGE 5 – OPINION AND ORDER

onset date, Plaintiff's averaged earnings throughout those years did not rise to the level of substantial gainful activity.[2] AR 22. At step two, the ALJ found that Plaintiff has the following severe impairments: "bilateral sensorineural hearing loss, lumbar degenerative joint disease/strain with pain, and left shoulder muscle pain." AR 22. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. AR 23. The ALJ found that Plaintiff has the RFC to perform medium work, with some limitations. AR 23. Specifically, the ALJ found:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he may frequently climb ramps and stairs, stoop, kneel, crouch and crawl. He may occasionally climb ladders, ropes, and scaffolds. He may frequently engage in handling and fingering with the right upper extremity. He may occasionally reach overhead with the left upper extremity. He must avoid more than occasional exposure to hazards such as moving machinery and unsecured heights. He must avoid all exposure to loud noise. He will perform optimally in work tasks that do not require fine hearing discrimination, and that can be performed in a quiet work environment.

*Id*.

In making this decision, the ALJ assigned great weight to the opinion of examining physician Justin Rufener, M.D., and only some weight to examining physician Nancy Vinikoor, M.D. AR 25-6. Lower weight was assigned to Dr. Vinikoor's opinion because the ALJ credited Plaintiffs complaints regarding severe back pain over Dr. Vinikoor's opinion that Plaintiff's back pain would not affect occupational functioning. AR 28. The ALJ assigned only some weight to state agency non-examining physicians Martin Kehrli, M.D., Martin B. Lahr, M.D., and Neal Berner, M.D. The ALJ credited their opinions regarding Plaintiff's hearing limitations. AR 27.

---

[2] Plaintiff's earnings from his job at McDonalds in 2008 ($8,928.87) and 2009 ($1,778.21) were below the $940 per month average for 2008 and $980 per month average in 2009 required to trigger the presumption of substantial gainful activity.

PAGE 6 – OPINION AND ORDER

Relating to Plaintiff's back pain, Dr. Kehrli, Dr. Lahr, and Dr. Berner opined that Plaintiff had no exertional limitations at the time of their opinion, but the ALJ noted that more recent evidence not seen by those physicians revealed that Plaintiff's back pain had been worsening. AR 27. The ALJ therefore reduced the weight of those doctors' opinions with respect to Plaintiff's exertional limitations. AR 27. The ALJ assigned significant weight to state agency non-examining physicians Robert Hander, M.D., and Sharon Eder, M.D., who opined that Plaintiff would be limited both by his hearing impairments and back pain. AR 28.

The ALJ also took into account Plaintiffs activities of daily living ("ADL") and Plaintiff's work experience after the alleged onset date in determining Plaintiff's RFC. AR 26. The ALJ noted that Plaintiff's ADLs were not limited to the same extent as Plaintiff's complaints of disabling symptoms. AR 26. Additionally, the ALJ remarked that Plaintiff's work experience, especially as a fast food worker, showed that Plaintiff's level of activity in those jobs belied his claim for disability. AR 26. The ALJ noted that Plaintiff's girlfriend, Lucille Masterson, reported that Plaintiff was able to help his mother with indoor and outdoor chores, drive a car, and perform other significant work-like activities after the alleged onset date. AR 27. Additionally, the ALJ considered an opinion from a non-acceptable medical source, Stephanie Pesa, Au.D., who opined that if Plaintiff obtained hearing aids, Plaintiff's ability to work would not be affected by his hearing problems. AR 28.

In light of Plaintiff's RFC, the ALJ found at step four that Plaintiff is capable of performing past relevant work as a buffet worker and busser. AR 28. The ALJ proceeded to step five to find that in the alternative, Plaintiff could perform the job of night janitor that exists in significant numbers in the national economy. AR 29. The ALJ based this finding on the testimony of the VE, who stated that the noise level of the job of night janitor as performed today

is lower than the noise level indicated in the outdated job description that appears in the Dictionary of Occupational Titles ("DOT"). AR 30, 72. In conclusion, the ALJ found that Plaintiff has not been under disability from the alleged onset date of December 31, 2004, to the date that the ALJ rendered his decision. AR 30.

## DISCUSSION

Plaintiff argues that the ALJ committed reversible error by: (A) failing to provide reasons for rejecting physicians' opinions regarding Plaintiff's hearing impairment and thereby issuing an RFC that is not supported by substantial evidence; and (B) issuing an RFC regarding Plaintiff's back pain that is outdated and therefore not supported by substantial evidence.

**A. Plaintiff's Hearing Impairment**

Plaintiff argues that the ALJ effectively rejected the opinions of state agency non-examining physicians by failing to take those opinions into consideration in formulating Plaintiff's RFC regarding his hearing impairment. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's

PAGE 8 – OPINION AND ORDER

opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

The RFC is the maximum a claimant can do despite their limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996

WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ limited Plaintiff to jobs involving exposure to at most moderate noise, or noise level three within the DOT. AR 24. The ALJ noted further that Plaintiff would perform optimally in tasks that could be performed in a quiet work environment. AR 24. Plaintiff argues that the proper RFC would have limited him to jobs involving exposure to at most quiet noise, or noise level two, based on the physicians' opinions. The companion manual to the DOT, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCODICOT"), provides examples of workplaces that involve noise level three, or moderate noise. U.S. Dept. of Labor, Employment, & Training Admin., SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES, Appendix D: Environmental Conditions (1993). Those workplaces include department stores, grocery stores, and fast food restaurants at off hours. *Id.* The SCODICOT also provides the example workplaces of a library, private office, and golf course to represent a noise level two workplace. *Id*.

Plaintiff argues that the physicians' opinions established that Plaintiff should be limited to workplaces with a noise level of two or less, and that by limiting Plaintiff to workplaces with a noise level of three or less, the ALJ effectively rejected the physicians' opinions without reason. The ALJ noted that Drs. Kehrli and Lahr opined that Plaintiff should "avoid all exposure to noise." AR 27. Their opinion relating to Plaintiff's hearing loss was given some weight by the

ALJ, although the ALJ noted that Plaintiff suffered from additional limitations unrelated to hearing loss. *Id.* The ALJ further noted that Dr. Berner opined that Plaintiff "needed to work in quiet settings and needed to avoid concentrated exposure to noise to preserve residual hearing." AR 27. Similar to the ALJ's treatment of Drs. Kehrli and Lahr, the ALJ gave Dr. Berner's opinion some weight relating to Dr. Berner's opinion of limitations from hearing loss but the ALJ again noted that more recent evidence showed Plaintiff had additional non-hearing related limitations. The ALJ also considered the opinions of Dr. Hander and Dr. Eder by noting that they opined that Plaintiff "should avoid even moderate exposure to noise." AR 28. The ALJ specifically noted that the opinions of these doctors are "well supported by the medical evidence" and that "significant weight has been given their opinions." *Id.* The ALJ also noted the opinion of Ms. Pesa, a non-acceptable medical source, but the ALJ found her opinion should be given only some weight because the ALJ found that Plaintiff's hearing impairment warranted more limitation than opined-to by Ms. Pesa. Finally, the ALJ noted that he gave great weight to Dr. Rufener's opinion that Plaintifff "may have some difficulty hearing, particularly in noisy environments." AR 27.

The ALJ gave some weight to three of the agency consulting doctors who assigned Plaintiff limitations relating to his hearing loss, and the ALJ gave significant weight to the opinions of Drs. Hander and Eder, emphasizing how well-supported their opinions were. As noted above, Drs. Hander and Eder opined that Plaintiff "should *avoid even moderate exposure to noise*." AR 28 (emphasis added). The ALJ did not, however, incorporate this limitation in the RFC, which only precludes Plaintiff from "exposure to *loud* noise." AR 24 (emphasis added). The ALJ provided no reason for failing to incorporate the limitation that Plaintiff should not be subjected to even *moderate* exposure to noise from Drs. Hander and Eder's opinion. Although

PAGE 11 – OPINION AND ORDER

Drs. Hander and Eder phrased the limitation as "moderate exposure to noise" instead of "moderate noise," it is a logical inference that those doctors meant to restrict Plaintiff to jobs at the quiet level, or DOT noise level two, in saying that Plaintiff should avoid exposure to moderate noise (DOT noise level three). Although the doctors did not use those precise words, as the ALJ noted, the doctors are disability agency consultants and are "considered experts in the Social Security Disability programs." AR 28. Use of "moderate" was not an accident. Further, this interpretation of Drs. Hander and Eder's medical opinion is supported by the opinions of Drs. Kehrli and Lahr (that Plaintiff should "avoid all exposure to noise") and Dr. Berner (that Plaintiff needed quiet settings and to avoid concentrated exposure to noise). All three of these doctors are also agency medical consultants and therefore experts in Social Security Disability programs. Accordingly, the ALJ erred by not limiting Plaintiff only to jobs involving quiet noise, or DOT noise level two.

This error by the ALJ, however, is harmless. Assuming that Plaintiff had to be limited to jobs with a noise level of two rather than three, Plaintiff would still be able to perform the job of night janitor, which exists in significant numbers in the national economy. AR 29. Although that job is listed in the DOT as having a noise level of three, the VE testified at hearing that the DOT listing is outdated. AR 72. The VE stated that as the job of night janitor is currently performed, the appropriate noise level designation is level two, or quiet. *Id*. An ALJ may rely on a VE's response to vocational hypotheticals when determining a claimant's disability. *Osenbrock*, 240 F.3d at 1162. Based on the VE's testimony, Plaintiff would be capable of performing the job of night janitor even if his RFC was limited to jobs with no greater than a noise level of two, as Plaintiff advocates would be appropriate.

B.  Plaintiff's Back Pain

   1.  Degree of Limitation

Plaintiff argues that the ALJ's RFC regarding Plaintiff's back pain was not supported by substantial evidence because it was based on outdated medical information. In formulating the RFC, the ALJ found that Plaintiff was limited to medium work due to his back pain. AR 23-4. The evidence that Plaintiff argues was not incorporated into the ALJ's formulation of the RFC was imaging performed in 2013 of Plaintiff's spine, which showed "moderate degenerative changes . . . most prominent at L5-S1." AR 745. The ALJ considered this piece of evidence in his analysis of the medical record and opinion evidence, and in formulating the RFC. The ALJ noted "X-rays of the lumbar spine performed on January 4, 2013, revealed moderate degenerative changes most prominent at L5-S1." AR 25-6. Before 2013, four physicians opined that Plaintiff had no exertional limitations resulting from his back pain. AR 27. The ALJ illustrated consideration of the new imaging evidence by reducing the weight given to those opinions, stating, "more recent evidence shows that the claimant is further limited by back pain associated with degenerative joint disease and left shoulder muscle pain to no more than medium work." *Id*.

The ALJ's analysis was not only limited to information preceding the 2013 imaging. At the 2014 hearing, Plaintiff explained that he could be on his feet all day so long as he got to move around, and that he could walk one mile before having to rest. AR 25, 48. The ALJ considered this testimony, the imaging evidence from 2013, and all of the other medical evidence and opinion evidence, and concluded that Plaintiff was limited to no more than medium work. AR 27. Although Plaintiff contends that the ALJ should have reached a different RFC based on the evidence, the Commissioner's conclusion must be upheld where the evidence is susceptible to more than one rational interpretation. *Burch*, 400 F.3d at 679. The Commissioner's decision to

PAGE 13 – OPINION AND ORDER

limit Plaintiff to medium work in the RFC was a rational interpretation of the medical and opinion evidence, and was supported by substantial evidence.

### 2. Duty to Develop the Record

Plaintiff also argues that the ALJ had a duty to develop the record in light of new medical evidence. "The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the claimant is unrepresented, represented by a lay person, or suffering from a mental illness rendering him or her unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

"No authority suggests that the regulations require the ALJ to continue developing the record until disability is established; the regulations require only that the ALJ assist the claimant in developing a complete record." *Hampton v. Astrue*, 2009 WL 2351703, at *11 (D. Or. July 27, 2009) (citing *Yuckert,* 482 U.S. at 146). Additionally, the Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (quoting *Diaz v. Sec'y of Human Health and Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). The government is only required to bear the burden of expense for an examination if additional evidence that is not in the medical record is necessary to resolve ambiguity. *Id*.

Plaintiff contends that because of the 2013 imaging, the ALJ's duty to develop the record required the ALJ to order a consultative examination of Plaintiff. Although the ALJ generally had a duty to develop the record, the ALJ did not find the evidence to be ambiguous or

PAGE 14 – OPINION AND ORDER

inadequate regarding the severity of Plaintiff's back pain. Additionally, Plaintiff was represented by counsel at his hearing, so a heightened duty for the ALJ was not triggered. As explained above, the ALJ considered the 2013 imaging in his analysis of the medical evidence, and reduced the weight given to the medical opinion evidence in light of the later-conducted imaging. AR 24-28. The ALJ also considered Plaintiff's testimony regarding the severity of his back pain, Plaintiff's ADLs, lay person testimony, and opinions from six physicians regarding Plaintiff's exertional limits, along with the objective medical evidence. AR 24-28. The ALJ included some back-related limitations in the RFC. There were no glaring ambiguities made apparent to the ALJ, so the duty to order a consultative examination or conduct further inquiry was not triggered.

Although there were no physician opinions rendered after 2013, the ALJ accounted for the 2013 imaging of Plaintiff's back in calculating Plaintiff's RFC. Despite Plaintiff's contentions regarding further inquiry that the ALJ should have taken, the burden of establishing disability lies with Plaintiff. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The ALJ acted within the bounds of his discretion in not ordering a consultative examination and evaluating the evidence as it stood. Thus, Plaintiff's RFC that limited him to medium work due to back pain is supported by substantial evidence. The ALJ did not err in formulating Plaintiff's RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 15 – OPINION AND ORDER